IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

R & R CAPITAL, LLC            :              CIVIL ACTION
                              :
        v.                    :
                              :
LYN MERRITT, et al.           :              NO. 07-2869

MEMORANDUM AND ORDER

McLaughlin, J.                              October 23, 2007


        Plaintiff R & R Capital, LLC ("R&R") is a New York
limited liability company.  Beginning in 2003, R&R entered into a
series of business ventures with defendant Lyn Merritt to invest
in properties in Southeastern Pennsylvania.  These investments
were made through a number of limited liability companies
("LLCs") formed by Merritt, R&R, and (in some instances) others.
All of these partnerships had Merritt as the managing member.

        The relationship between R&R and Merritt subsequently
deteriorated.  In November 2005, R&R sued Merritt in New York
state court, seeking, among other things, to have her removed as
managing member of several of the investment LLCs and accusing
her of fraud, misappropriation, and breach of fiduciary duty.  In
February 2007, after a series of hearings, the Honorable Charles
E. Ramos of the New York Supreme Court issued an order allowing
Merritt to sell properties of the LLCs, but requiring her to
provide 48 hours notice to R&R to allow it time to apply for a
restraining order to prevent any sale.  On July 6, 2007,

Merritt's attorney faxed a letter to R&R stating her intention to transfer several LLC properties in Chester County, Pennsylvania, to a company wholly owned by her in satisfaction of certain claimed debts she incurred in managing the LLCs.  R&R filed suit in this Court on July 12, 2007, seeking, among other relief, a temporary restraining order preventing the sale.

      R&R's suit here alleges essentially two separate schemes.  The first involves Merritt's threat to transfer certain Chester County properties owned by several of the LLCs to her company, defendant The Big L Ranch, LLC ("Big L").  The second involves allegedly improper transfers of properties in the Grays Ferry section of Philadelphia from an LLC called Grays Ferry Properties, LLC ("Grays Ferry Properties"), owned by R&R, Merritt, and defendant Peter Pelullo.  Only the allegations concerning the Chester County properties were at issue in the temporary restraining order.

      This Court denied R&R's request for a temporary restraining order on August 13, 2007, finding that there were serious questions as to whether the Court had subject matter jurisdiction over this suit and, if jurisdiction existed, whether the Court should abstain from exercising that jurisdiction under Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976).  The Court ordered the parties to submit supplemental briefing on the issue of jurisdiction, and the

defendants separately filed a motion to dismiss raising <u>Colorado River</u> abstention.

The Court finds that it has subject matter jurisdiction over this suit but that it should abstain under the principles of <u>Colorado River</u>.  Because there is a question as to whether the defendants involved in the allegations concerning the Grays Ferry properties are subject to the jurisdiction of the New York court, the Court will condition its dismissal of the allegations concerning Grays Ferry on defendants Peter Pelullo and Grays Ferry Development Corp. submitting to the jurisdiction of the New York court.

I.    <u>Background</u>

In 2003, R&R Capital, Lyn Merritt, and Ms. Merritt's boyfriend Leonard Pelullo decided to invest together in real estate in Southeastern Pennsylvania.  Mr. Pelullo was subsequently incarcerated on unrelated fraud charges and is not mentioned further in R&R's allegations here.  As vehicles for their investments, R&R and Merritt created limited liability companies to buy and hold investment properties.  Each of these LLCs was governed by a separate operating agreement, and all of them named Merritt as the managing member.  Several of those LLCs invested in property in Chester County, Pennsylvania.  Another of

the LLCs invested in property in the Grays Ferry section of
Philadelphia.  Am. Compl. ¶¶ 11, 30, 34, 38, 42.

    A.    <u>The New York State lawsuit</u>

      In November 2005, R & R filed suit in the Supreme Court
of New York against Lyn Merritt seeking to remove her as managing
member of the jointly owned LLCs.  The suit also sought damages
for fraud, breach of contract, and unjust enrichment, as well as
an accounting from the LLCs.  Merritt counterclaimed for damages.
The progress of the litigation to date has been substantial.  The
presiding judge, the Honorable Justice Charles E. Ramos, has heard
and denied R&R's application to remove Merritt as managing member
and has already conducted several sessions of a bench trial on
R&R's claims, some of which it has dismissed.[1]  The next portion
of the trial was scheduled to begin October 15, 2007.

      In the first hearing in the New York case, held on
November 17, 2005, the New York court considered R&R's request for
an injunction to prevent Merritt from disbursing LLC property
without R&R's consent.  At the end of the hearing, the Court
granted the injunction but limited it by allowing Merritt to make
payments and expenditures in the ordinary course of business

---

[1] August 1, 2007, Affirmation in Opposition to Defendant's
Application for an Order of Contempt at ¶¶ 4-5, filed in <u>R&R
Capital LLC v. Linda Merritt</u>, Index No. 604080/05, IAS Part 53
(N.Y. Supreme Ct.), and attached as Exhibit 1 to R&R's Opposition
to the Defendants' Motion to Dismiss.

without seeking R&R's approval.  After a number of subsequent hearings, the New York court modified its injunction order on February 23, 2006.  The court lifted the injunction and removed all restraints on Merritt's ability to manage the LLCs except that Merritt was required to give R&R 48 hours notice before selling or encumbering LLC property.  The court told the parties that the 48 hour notice period would allow time for R&R to come into court and request a TRO to halt any proposed sale.  Under these provisions, several of the LLC properties were sold.[2]

In a session held on February 26, 2007, the New York court considered R&R's request for an accounting as to the sale of certain properties from the LLCs.  The parties and the court discussed the possibility of selling all the properties of the LLCs, liquidating them, and having one single accounting for all the LLCs.  In that discussion, the New York court ruled that, on the facts so far presented, R&R had not shown it was entitled to a pre-sale accounting under either the terms of the operating agreements or corporate law, but left the matter open for further briefing.[3]

---

[2]     Transcript of August 3, 2007, Hearing in R&R Capital, Index No. 604080/05 at 3-7.

[3]     Transcript of February 26, 2007, Hearing in R&R Capital, Index No. 604080/05 at 190-208

B.    The Allegations Concerning Properties in Chester County

On July 6, 2007, Merritt's counsel sent a letter to R&R's counsel, informing R&R that, in 48 hours, Merritt was going to transfer four Chester County properties from their jointly-owned LLCs to her own company, Big L.  The four properties that Merritt proposed transferring are collectively worth several million dollars.  In the letter, Merritt contended that these properties needed to be transferred and sold to pay creditors of the LLCs and to pay back administrative expenses owed to her and to her counsel.  The letter lists a number of guarantees and payments that Merritt contends she made on behalf of the LLCs for which she contends the LLCs should indemnify her, in the total amount of $2.8 million dollars.  Am. Compl. ¶¶ 28-30 and Ex. A.

On July 12, 2007, R&R filed this suit, seeking to block the proposed transfer of these properties.  The claims relating to the Chester County properties bring causes of action against Merritt for breach of the LLC operating agreements, breach of fiduciary duty, and breach of duty to an insolvent company (because R&R contends each transfer would make the respective LLC that owns it insolvent); and causes of action against Merritt and her company Big L Ranch for tortious interference with existing business relationships (by causing a breach of the LLC agreement), conversion, unjust enrichment, civil conspiracy, and fraudulent transfer, plus a count for declaratory and injunctive relief.  For

all of these counts, R&R seeks compensatory and punitive damages, plus an injunction compelling defendants to return title or the lease to these properties to the LLC that held them prior to the initial transfer and enjoining them from selling or otherwise disposing of the properties.  Am. Compl. Counts IV-XII

The complaint alleges that each of the four Chester County properties to be sold is owned by a separate LLC.  R&R is a member of each of these LLCs and Merritt is the managing member. Each LLC has an operating agreement which provides, <u>inter alia</u>, that no LLC property shall be transferred or encumbered for the individual obligation of any member; that no member shall have priority over any other for return of capital contributions; that the Managing Member is not entitled to compensation for managing; and that the Managing Member cannot transfer property without the members consent for an amount less than the sum of the outstanding loan on the property plus the capital contribution of the members. R&R contends that Merritt's proposed transfer would violate the terms of the respective LLC operating agreements.  Am. Compl. 31, 35, 39, 43, 47.

C.   <u>The Allegations Concerning Properties in Grays Ferry</u>

In 2004, R&R, Lyn Merritt and Leonard Pelullo's son Peter Pelullo formed Grays Ferry Properties, as a vehicle to invest in distressed property in the Grays Ferry section of

Philadelphia.  Their business plan was to buy abandoned properties
in Grays Ferry and then renovate them and resell them as
affordable housing, taking advantage of several government
subsidies.  The renovations were to be done by Peter Pelullo's
company Grays Ferry Development.  Over the next several years,
Grays Ferry Properties purchased 22 properties in Philadelphia.
Am. Compl. ¶¶ 13-20.

In April 2007, R&R learned that Merritt had agreed to
transfer one of the properties purchased by Grays Ferry Properties
to Peter Pelullo in satisfaction of a claimed debt to him for
construction work.  In discussing the transaction, R&R learned
that the property, although bought by Grays Ferry Properties, had
been incorrectly titled in Peter Pelullo's name.  R&R then
investigated the titles of other properties purchased by Grays
Ferry Properties.  In all, R&R contends that twelve properties
purchased by Grays Ferry Properties are incorrectly titled in the
name of Peter Pelullo or his company, Grays Ferry Development.
Am. Compl. ¶¶ 22-25.

R&R contends that the titling of these properties in the
names of Pelullo and Grays Ferry Development constitutes a breach
of the Grays Ferry Properties' Operating Agreement.  The Operating
Agreement provides that R&R's consent is required to make any
transfers of property for less than market value or to make any
transfers between Grays Ferry Properties and other members.  In

8

its amended complaint, R&R seeks unspecified damages for breach of the Operating Agreement, as well equitable relief against Merritt, Pelullo, and Grays Ferry Development, Inc. in the form of a quiet title action and a request for declaratory and injunctive relief to have the properties re-titled in Grays Ferry Properties' name. Am. Compl. Counts I, II, II.

        D.    <u>The Contempt Hearing in New York state court</u>

After this suit was filed, defendant Merritt moved to have R&R held in contempt in the New York action.  Merritt argued that the order of the New York court that required Merritt to give 48 hours notice before selling or encumbering LLC property, required R&R to seek an injunction to stop the sale or encumbrance before the New York court.  Merritt contended that R&R's recourse to this Court to stop the transfer of the Chester County properties constituted a violation of the New York court's order and an improper attempt at forum shopping.

After a lengthy telephone hearing, the New York court denied the motion.  Although the New York court made clear that, in its opinion, R&R was seeking to circumvent the two years of proceedings in New York and that those proceedings encompassed the same issues raised here, the New York court held it could not

interfere with this Court's ability to determine its own jurisdiction or to punish R&R for resorting to federal court.[4]


II.   Analysis

    A.   The Court's Subject Matter Jurisdiction

        Before turning to the merits of the defendants' motion to dismiss, the Court must first address whether it has jurisdiction over this case.  Jurisdiction here is predicated on diversity.  In R&R's complaint as originally filed, however, the parties did not appear to be completely diverse.  R&R attempted to correct this by filing an amended complaint which dropped the possibly non-diverse defendant.  The Court must therefore determine whether complete diversity was lacking in the complaint as originally filed, and if so, whether that defect was corrected by the filing of the amended complaint.


        1.   Lack of Complete Diversity as Originally Filed

        In the complaint as originally filed, one of the defendants, Grays Ferry Properties, is a limited liability company that is alleged to 40% owned by the plaintiff, R&R.  The United States Court of Appeals for the Third Circuit has not yet

_____

        [4]   Transcript of August 3, 2007, Hearing in R&R Capital, Index No. 604080/05 at 26-28, 64-66; cf. General Atomic Co. v. Felter, 436 U.S. 493, 495-96 (1978) ("The right to pursue federal remedies . . . may no[t] . . . be restricted by a state court.").

addressed how to determine the citizenship of a limited liability company.  Other courts in this circuit and elsewhere, however, have consistently held that the citizenship of a limited liability company is determined like that of a limited partnership, by imputing to it the citizenship of its members.  See, e.g., Hicklin Engineering, L.C. v. Bartell, 439 F.3d 366, 347-48 (7th Cir. 2006); Kalian at Poconos, LLC v. Saw Creek Estates Community Assoc., Inc., 275 F. Supp.2d 578, 586 (M.D. Pa. 2003).

These decisions accord with the reasoning of the United States Supreme Court in Carden v. Arkoma Associates, 494 U.S. 185, 190 (1990), which held that the citizenship of a limited partnership is to be determined by looking at the citizenship of its partners.  Carden based its decision on what it described as the "tradition of the common law" which is "to treat as legal persons only incorporated groups and to assimilate all others as partnerships."  The citizenship of "artificial entities other than corporations" is therefore to be determined by looking at the citizenship of the entities' members.  Id.

The Court finds the reasoning of Hicklin and Kalian persuasive.  As a limited partnership, the citizenship of Grays Ferry Properties is the citizenship of its members.  As the complaint alleges that Grays Ferry Properties is 40% owned by R&R, both Grays Ferry Properties and R&R have the same citizenship and

complete diversity did not exist over the suit as originally filed.

### 2.   The Effect of Dropping Grays Ferry Properties

After the Court drew the parties attention to the possible jurisdictional defect concerning Grays Ferry Properties, R&R sought to correct it by filing an amended complaint that dropped Grays Ferry Properties as a defendant.   Ordinarily, jurisdiction is to be determined at the time a complaint is filed. Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 570-71 (2004).  There is an exception to this rule, however, for cases where federal jurisdiction is based on diversity.

Both the United States Supreme Court and the United States Court of Appeals for the Third Circuit have held that a court may retain jurisdiction over a suit where complete diversity is lacking if it dismisses the non-diverse parties from the suit under Fed. R. Civ. P. 21 and if the parties to be dismissed are not indispensable to the lawsuit under Fed. R. Civ. P. 19. Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 832 (1989) ("it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time, even after judgment has been rendered"); Publicker Indus., Inc. v. Roman Ceramics Corp., 603 F.2d 1065, 1069 (3d Cir.

1979) (holding district court retained jurisdiction over case after it dismissed non-diverse, but not indispensable party).[5]

Under Rule 19 of the Federal Rules of Civil Procedure, the test for indispensability is two-part.  First, a party must be determined to be a necessary party under Rule 19(a); if it is, then a party must be determined to be an indispensable party under Rule 19(b).[6]  A party is "necessary" if either 1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of

---

[5]     In this case, the non-diverse party, Grays Ferry Properties, was dropped not by the Court under Rule 21, but by the plaintiff, who did so by amending his complaint as of right prior to the defendant's filing a responsive pleading pursuant to Fed. R. Civ. P. 15(a).  This distinction does not affect the analysis of whether dropping the non-diverse defendant cured the lack of diversity.  See Soberay Mach. & Equip. Co. v. MRF Ltd., Inc., 181 f.3d 759, 763 (6th Cir. 1999) ("[I]t makes no difference wither Rule 15 or Rule 21 is used to retain federal diversity jurisdiction over a case.").

[6]  The language distinguishing between a "necessary" party and an "indispensable" party comes from a earlier version of Rule 19, in effect prior to its amendment in 1966.  The current version of Rule 19(a) no longer refers to a "necessary" party, but instead refers to a party to be joined if "feasible."  Rule 19(b) still refers to an "indispensable" party, although this will no longer be true under proposed revisions to the rule which will go into effect December 2007 absent congressional action. These proposed revisions refer to parties whose joinder is "not feasible."  Despite no longer having a basis in the text of the rule, courts have continued to use the terms "necessary" and "indispensable" as shorthand for the requirements of Rule 19(a) and 19(b), respectively, and the Court will do so here.  See, e.g. Janney Montgomery Scott, Inc. v. Shepard Niles, Inc., 11 F.3d 399, 404 n.4 (3d Cir. 1999).

the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.  Fed. R. Civ. P. 19(a).

After a party has been determined to be "necessary," a court must consider four factors to determine if it is "indispensable":  1) to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; 2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; 3) whether a judgment rendered in the person's absence will be adequate; and 4) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.  Fed. R. Civ. P. 19(b).

> a   Grays Ferry Properties is not a Necessary Party to the Allegations Concerning the Chester County Properties.

To apply Rule 19 here, the Court must analyze separately the two sets of allegations in the complaint, those concerning the Chester County properties and those concerning the Grays Ferry properties.  Because Grays Ferry Properties has no connection to the allegations concerning the Chester County properties, Grays

Ferry Properties is not necessary to their adjudication.  Complete relief concerning the Chester County properties could be granted without Grays Ferry Properties being present, and its absence would not impair its ability to protect its interests or leave the remaining parties at a risk of inconsistent or duplicate obligations because it has no interest in these properties.

> b   Grays Ferry Properties is a Necessary, but not Indispensable, Party to the Allegations Concerning the Properties in Grays Ferry.

The other allegations in the complaint, both as originally filed and as amended, directly concern Grays Ferry Properties.  In those allegations, defendants Lyn Merritt, Peter Pelullo, and Grays Ferry Development are accused of wrongly transferring the title to twelve properties purchased by Grays Ferry Properties into the names of Pelullo and Grays Ferry Development, ostensibly as payment for construction work.  On the basis of these allegations, R&R seeks relief in the form of a quiet title action and a request for declaratory and injunctive relief to order these defendants to have the title to these properties transferred back to Grays Ferry Properties.

> (1)   The HB decision

Both parties agree that the starting point for determining whether Greys Ferry Properties is a necessary and

15

indispensable party is <u>HB Gen. Corp. v. Manchester Partners L.P.</u>, 95 F.3d 1185 (3d Cir. 1996).  In <u>HB</u>, the United States Court of Appeals for the Third Circuit considered whether a limited partnership was a necessary and indispensable party to a dispute among its members.

<u>HB</u> involved a dispute among the three members of a limited partnership.  The general partner and one of the two limited partners sued the remaining limited partner, alleging that it had failed to comply with its obligation under the partnership agreement to contribute capital.  The plaintiffs also sought a declaratory judgment that, by failing to fund the limited partnership, the defendant had thereby lost its status as a limited partner.  The defendant counterclaimed, alleging that the limited partnership's failure to develop certain properties had triggered its rights under the partnership agreement to redeem its shares and force the sale of the limited partnership's property. The defendant also filed a parallel state court action against the other partners and the partnership.

The defendant moved to dismiss the federal court lawsuit, arguing that although the named parties – the plaintiff general partner, plaintiff limited partner, and defendant limited partner – were completely diverse, the limited partnership itself was a necessary and indispensable party to the suit, whose joinder would destroy jurisdiction.  <u>Id.</u>, 95 F.3d at 1188.  The district

court accepted this argument and dismissed the suit.  The court of appeals reversed.

The HB court first analyzed whether the partnership was a "necessary" party under Rule 19(a).  The court found that it was because the defendant's alleged failure to contribute capital was a breach of an obligation that ran to the partnership and because, if the defendant prevailed, it would force a sale of the partnership's property.  As such, the partnership had an "interest relating to the subject of the action" and a disposition in its absence could "impair or impede" its ability to protect that interest.

The HB court then turned to a much more complicated analysis of whether the partnership was indispensable under Rule 19(b).  Applying the factors listed in the Rule, the HB court first concluded that the absence of the partnership would not cause prejudice to the defendant.  The court recognized that the defendant might be subjected to duplicative litigation if the absent partnership were able to later bring an identical claim. The court held that this potential prejudice could be prevented because all the partners to the partnership were parties to the litigation and therefore could be enjoined from bringing a subsequent suit on behalf of the partnership.  The court also held that the general partner could be required to cause the partnership to relinquish its claim against the defendant as a

17

condition of judgment to prevent the possibility that the claim could be assigned to someone not before the court.  Because the trial court could shape any relief to prevent prejudice to the parties, the court found that this factor did not weigh in favor of finding the partnership indispensable.

The HB court next considered the partnership's interest in participating in the litigation.  The court looked to state law – in HB, Delaware law – to define those interests, particularly the partnership's causes of action for the defendant's breach of the partnership agreement.  The court noted that partnerships in Delaware law were in some respects distinct legal entities, but in other respects mere aggregations of individuals.

The court concluded that the partnership had an interest in the litigation under consideration because Delaware law considered limited partnerships as entities with respect to real property, allowing them to acquire and convey it in its own name and giving limited partners only limited rights to partnership property.  Because the litigation before the court could result in the sale of the partnership property, the partnership had an interest in the claim.  The court also found that the partnership's potential cause of action against the defendant could also be considered a property interest that could be impaired by the suit.

Having found that the partnership had an interest in the suit, the court nonetheless found that it would not be prejudiced by being excluded from the action.  The court found that the partnership's interests necessarily derived from that of its members who were all represented in the suit.  Following what it called Rule 19's pragmatic approach, it found that the partnership's interests were "adequately represented by the partners."  Although each of the partners might have certain interests separate from the partnership's, the court found the partnership's interests against the defendant limited partner would be adequately advanced and protected by the general partner. The court left open the possibility that another case, on different facts, the interests of the partners and of the partnership could sufficiently diverge to make the partnership an indispensable party.

The court next considered the defendant's argument that, because the plaintiff's action was a derivative one, the partnership was necessarily an indispensable party.  This argument relied on a line of U.S. Supreme Court cases which held that, in the context of corporate shareholder derivative suits, that a corporation is an indispensable party to any such action.  Ross v.

<u>Bernhard</u>, 396 U.S. 531, 538 (1970); <u>Koster v. Lumbermens Mut. Cas.</u>
<u>Co.</u>, 330 U.S. 518, 522 (1947).[7]

The <u>HB</u> court distinguished this line of cases in two
ways.  First, it held that the suit at issue might not be
derivative.  Ordinarily, a suit is derivative if the harm to the
plaintiff is dependent or derived from the harm to the partnership
or corporation.  In <u>HB</u>, however, although the harm at issue was
suffered by the partnership, not by the plaintiff directly, the
plaintiff was also the general partner who had authority under
Delaware law to act for the partnership and bring suit on its
behalf.  Thus, the plaintiff could bring suit directly and the
suit did not need to be characterized as derivative.  <u>Id.</u>, 95 F.3d
at 1194-95.

Second, the court held that whether or not the suit was
derivative was irrelevant to determining whether the partnership
was indispensable.  The court held that, although state law
determined the interests of those affected by the litigation,
federal law governed the balancing of those interests in

_____

[7]    <u>See also</u> <u>Weinstein v. Schwartz</u>, 422 F.3d 476, 478 n.2
(7th Cir. 2005) (holding that corporate defendant was a
"dispensable non-diverse party" because plaintiff's claims were
not derivative claims);  <u>Buckley v. Control Data Corp.</u>, 923 F.2d
96 (8th Cir. 1991) (noting "[i]t is well established that an
entity on whose behalf a derivative claim is asserted is a
necessary defendant in the derivative action" and holding that
the issue of whether plaintiff's claims were derivative was
"dispositive" of the question of whether limited partnership was
indispensable party who could not be dismissed to preserve
jurisdiction).

determining indispensability.  The court held therefore that, even
if state law required joinder of a partnership in derivative
actions, that would not affect the balancing of interests under
Rule 19.  The <u>HB</u> court distinguished the <u>Ross</u> and <u>Koster</u> line of
cases in the U.S. Supreme Court as based on the corporation's
"deeply rooted" status as a "distinct jural entity" and suggested
that the rule of indispensability in those case was "uniquely
appropriate" to corporate entities.  <u>Id.</u>, 95 F.3d at 1195-96.


### (2) <u>Applying HB to Grays Ferry Properties</u>

Applying <u>HB</u> to the case here, it appears that Grays
Ferry Properties is a necessary but not an indispensable party
under Rule 19.  Grays Ferry Properties is a necessary party
because it, like the limited partnership in <u>HB</u>, has an "interest
relating to the subject of the action" and a disposition in its
absence could "impair or impede" its ability to protect that
interest.  Grays Ferry Properties is the initial owner of the
properties allegedly wrongfully titled in Mr. Pelullo's name.
Grays Ferry Properties accordingly has an interest in those
properties that would be impaired if the Court were to determine
that they had been properly transferred to Mr. Pelullo.

Grays Ferry Properties is not, however, an indispensable
party.  Under Rule 19, the first two factors to be considered in
determining whether a party is indispensable are the extent to

which a judgment rendered in the person's absence might be prejudicial to the person or those already parties, and the extent to which that prejudice can be avoided by protective provisions in the judgment or the shaping of relief.  As in HB, here, the court can construct a form of relief that avoids any prejudice to the existing parties from Grays Ferry Properties's absence.

If Grays Ferry Properties does not participate in this action, there is a risk that it will not be bound by any determination of this Court, and could later bring a duplicative action in its own behalf.  This risk can be eliminated, however, because all the members of Grays Ferry Properties are existing parties to the suit and so they can be enjoined from prosecuting a duplicative action on Grays Ferry Properties's behalf and required to release Grays Ferry Properties's claim as a condition of judgment.  As found in HB, because any prejudice from Grays Ferry Properties's absence can be avoided, this weighs heavily against finding Grays Ferry Properties an indispensable party.

The third and fourth factor to be considered for indispensability are whether a judgment rendered in the person's absence will be adequate; and whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder. Following HB, the Court must look to state law to determine whether Grays Ferry Properties has an interest in participating in the litigation.  The Court finds that it does.  Under Pennsylvania

22

law, a limited liability company like Grays Ferry Properties may
be organized for any lawful purpose and may hold and transfer
property.  15 Pa. C.S.A. §§ 8903; 8923(b).

        Grays Ferry Properties's interest in the properties,
however, will not be impaired by its absence.  All of the members
of Grays Ferry Properties are already present in the suit and can
protect the limited liability company's interest.  If, as the
plaintiff contends, properties were wrongfully transferred from
Grays Ferry Properties by Lyn Merritt into Peter Pelullo's name,
then Grays Ferry Properties's interest in having those properties
returned will be adequately represented by the plaintiff.  If, as
the defendants contend, the properties were transferred to satisfy
a debt owed by Grays Ferry Properties to Pelullo, then Grays Ferry
Properties's interest in having those transactions affirmed will
be represented by the defendants.

        Finally, following the reasoning of the HB court, the
Court finds that the characterization of this claim as derivative
or non-derivative is irrelevant to determining whether Grays Ferry
Properties is indispensable.  Even if R&R's claim were considered
to be derivative of Grays Ferry Properties, that would not make
Grays Ferry Properties an indispensable party.  The HB court found
that a derivative suit brought against a limited partnership would
not require the partnership to be joined as an indispensable
party.  In so finding, it distinguished the U.S. Supreme Court's

23

decisions in <u>Ross</u> and <u>Koster</u>, which held that, in derivative suits against corporations, the corporation was an indispensable party. The <u>HB</u> court held that <u>Ross</u> and <u>Koster</u> were based on the distinct and deeply rooted legal status of corporations and that their reasoning did not apply to other legal entities.

Here, Grays Ferry Properties is a Pennsylvania limited liability corporation.  Under Pennsylvania law, limited liability corporations are more similar to limited partnerships than to corporations.  The section of the Pennsylvania code dealing with limited liability corporations, 15 Pa. S.C.A. §§ 8901-8995, is a subchapter of the section dealing with partnerships, 15 Pa. S.C.A. §§ 8101-8995.  The reasoning of the <u>HB</u> decision therefore applies here, and the fact that this suit might be a derivative action does not, in and of itself, make Grays Ferry Properties an indispensable party.

Because Grays Ferry Properties is not an indispensable party to this suit, R&R could permissibly drop it as a defendant to preserve complete diversity between the parties.  This Court therefore has jurisdiction over the action and can turn to the merits of the defendants' motion to dismiss.

B.   <u>Colorado River Abstention</u>

The defendants have moved to dismiss this suit on the ground that this Court should abstain from hearing it under

24

<u>Colorado River</u>.[8]  Ordinarily, federal courts have a "virtually

unflagging obligation" to exercise their jurisdiction, and the

fact that a parallel action is pending in state court is "no bar"

_____

     [8]    The defendants have also moved to dismiss on two other
grounds.  They argue that R&R's suit is barred by the doctrine of
res judicata and by a forum selection clause in the LLC operating
agreements.  Neither argument is persuasive.
     Res judicata applies only where there has been a final
judgment on the merits in a prior suit.  <u>Post v. Hartford Ins.</u>
<u>Co.</u>, __ F.3d. __, 2007 WL 2669825 at *11 (3d Cir. Sept. 13,
2007).  Here, the New York court, whose decisions the defendants
argue should be given res judicata effect, has not yet issued a
final ruling.
     The forum selection clauses that the defendants contend
bar this suit appear in the operating agreements for the LLCs
that own the Chester County properties at issue.  These clauses
state that "in any action or proceeding arising out of, related
to, or in connection with this Agreement, the parties consent to
be subject to the jurisdiction and venue of" the state courts of
New York and the federal district court for the Southern District
of New York.  Am. Compl. Ex. B at ¶ 13.17; Operating Agreements
attached to Declaration of Harvey Russack, attached to
Plaintiff's Motion for a Temporary Restraining Order at ¶¶ 13.17,
13.18.
     These clauses do not bar this suit because, by their
plain language, they do not require the parties to bring suit in
New York, but only provide that, if such a suit is brought, all
parties consent to jurisdiction.  <u>See</u> <u>John Boutari & Son, Wines &</u>
<u>Spirits, S.A. v. Attiki Imp. and Distrib., Inc.</u>, 22 F.3d 51, 53
(2d Cir. 1994) (citing the general principle for interpreting
such clauses that "an agreement <u>conferring</u> jurisdiction in one
forum will not be interpreted as <u>excluding</u> jurisdiction elsewhere
unless it contains specific language of exclusion.") (emphasis in
original).  Moreover, these clauses appear only in the operating
agreements for the LLCs which own the Chester County properties.
The operating agreement for Grays Ferry Properties contains a
different forum selection clause in which the parties consent to
jurisdiction in state courts of Pennsylvania and the federal
district court for the Eastern District of Pennsylvania.  Ex. E
to R&R's Mem. in Opp. to Plaintiff's Motion to Dismiss at ¶
13.17.  This clause, like those in the other operating
agreements, is permissive, not exclusive, and does not require
that suit over the operating agreements be filed in Pennsylvania.

to federal court proceedings concerning the same matter.  Colorado River, 424 U.S. at 817; see also Univ. of Md. at Balt. v. Peat Marwick Main & Co., 923 F.2d 265, 275-76 (3d Cir. 1991) ("The general rule regarding simultaneous litigation of similar issues in both state and federal courts is that both actions may proceed until one has come to judgment, at which point that judgment may create a res judicata or collateral estoppel effect on the other action.").

Colorado River sets out a narrow exception to this general rule where "exceptional circumstances" justify abstaining in favor of a pending parallel state proceeding.  Id., 424 U.S. at 813.  Analysis under Colorado River is two-part.  First, the Court must determine whether the pending New York action is "parallel" to this one.  Then, the Court must consider whether "exceptional circumstances" exist that require abstention.


        1.   Parallel Proceedings

        For judicial proceedings to be parallel, the state and federal cases must have a "substantial identity" of parties, claims and issues.  IFC Interconsult, AG v. Safeguard Int'l Partners, LLC,  438 F.3d 298, 306 (3d Cir. 2006).  Here, both the parties and the issues involved in this action and the pending New York action are substantially identical.

26

Both suits are brought by the same plaintiff, R&R,
against the same central defendant, Lyn Merritt.  Although Merritt
is the only defendant named in the state action, R&R has named the
putative transferees of the disputed properties – Big L Ranch with
respect to the Chester County properties and Peter Pelullo and
Grays Ferry Development with respect to the Grays Ferry Properties
– as additional defendants in the federal action.  These
additional defendants do not prevent the two proceedings from
being parallel.  Parallel actions need not involve identical
defendants as long the parties and issues involved are
substantially identical.  Id.; see also Ryan v. Johnson, 115 F.3d
193, 196 n.1 (3d Cir. 1997).

Both the state and federal actions concern Merritt's
alleged mismanagement of the same LLCs and both seek, inter alia,
an equitable accounting.  The federal action is narrower,
challenging only Merritt's actions in transferring or seeking to
transfer specific LLC properties in Chester County and Grays
Ferry.  The state court action alleges broader financial
mismanagement of the LLCs by Merritt and seeks her removal as
managing partner.  In both actions, the propriety of Merritt's
actions with respect to the Chester County and Grays Ferry
properties is at issue.  A final decision in either action will
resolve whether Merritt had the authority to transfer those
properties and, through the requested accounting, whether R&R or

the LLCs at issue are owed any money from Merritt or the transferees.

2.   Exceptional Circumstances

Having found that this action and the pending New York action are parallel proceedings, the Court must now determine whether "exceptional circumstances" justifying abstention are present here.  In Colorado River, the United States Supreme Court set out four factors to "inform the court's discretion" in determining whether extraordinary circumstances exist:  "whether either court has assumed jurisdiction over property, the inconvenience of the federal forum, avoidance of piecemeal litigation, and the order in which the courts obtained jurisdiction."  Ingersoll-Rand Financial Corp. v. Callison, 844 F.2d 133, 136 (3d Cir. 1988) (citing Colorado River, 424 U.S. at 818).  In a subsequent decision, the Supreme Court identified two additional factors: "which forum's law governs the merits of the litigation and the adequacy of the state forum to protect the parties' rights."  Id. (citing Moses H. Cone Hosp. v. Mercury Constr. Corp., 460 U.S. at 23, 26 (1983)).

a.   Jurisdiction over Property

The United States Court of Appeals for the Third Circuit has described the first factor as whether either court has

28

obtained jurisdiction over property.  Ingersoll-Rand, 844 F.2d at
136; see also Ryan, 115 F.3d at 196 (describing element as whether
either court has assumed in rem jurisdiction over property).

        Neither the proceedings in New York nor in this Court
are in rem.  The claims in both venues are principally brought
against Ms. Merritt personally.  Although not in rem, both actions
nonetheless involve the exercise of court authority over property.
In earlier proceedings, the New York court issued an injunction
forbidding Merritt, as managing partner of the LLCs, from selling
any of the LLCs property without court approval.  The New York
court then subsequently lifted this order, allowing Merritt to
sell properties if 48 hours notice was given to R&R.  In issuing
both these orders, the New York court was asserting effective
control over the LLCs and the properties at issue.  Pursuant to
those orders, Merritt gave notice that she intended to sell the
Chester County properties.  R&R then sought recourse in this Court
to prevent those authorized sales.  If these two parallel suits
proceed, they create the very real possibility of directly
contrary injunctive orders concerning the sale of the same Chester
County properties, neither of which would be res judicata to the
other because neither would constitute a final order.

        The possibility of conflicting orders concerning the
same property, even though neither action is technically in rem,
would appear to be the type of conflict that the "jurisdiction

over property" element of the <u>Colorado River</u> analysis is designed
to prevent.  This conclusion is supported by the Supreme Court's
discussion of this factor in <u>Colorado River</u>.  In setting out
"jurisdiction over property" as one basis for abstention, the
<u>Colorado River</u> court cited to a line of cases in which it had held
that a court that establishes <u>in rem</u> jurisdiction over property
could exercise that jurisdiction to the exclusion of all others.
<u>Id.</u>, 424 U.S. at 818 (citing <u>Princess Lida of Thurn and Taxis v.</u>
<u>Thompson</u>, 305 U.S. 456, 466 (1939)) (other citations omitted).

        In <u>Princess Lida</u>, the Supreme Court considered parallel
lawsuits in state and federal court over the handling of a trust.
The state court action, in which the trustees' sought to confirm
an account of their management, had been filed first.  The
subsequent federal action was brought by the beneficiaries to
challenge the trustees' management and seek their removal.
Neither the state nor the federal courts abstained in favor of the
other, and both issued orders restraining the parties from
proceeding in the other court.  <u>Id.</u>, 305 U.S. at 459-61.

        The Supreme Court began its analysis by noting that,
under state law, the trustee's action had given the state court
jurisdiction over the trust <u>res</u>.  This, however, did not
necessarily bar a subsequent federal action concerning the trust.
The Supreme Court held that a subsequent suit that sought an <u>in</u>
<u>personam</u> judgment, such as suit in which a plaintiff sought to

adjudicate his claim to a portion of the trust funds, would not be affected by the pendency of the state suit: "Where the judgment sought is strictly in personam, both the state court and the federal court, having concurrent jurisdiction, may proceed with the litigation at least until judgment is obtained in one of them which may be set up as res judicata in the other."  Id., 305 U.S. at 465-66.

     This was not true, however, when the subsequent suit sought a judgment in rem or quasi in rem and "the court, or its officer, has possession or must have control of the property which is the subject of the litigation in order to proceed with the cause and grant the relief sought."  In such cases, "the jurisdiction of the one court must yield to that of the other" and the court first assuming jurisdiction over property "may maintain and exercise that jurisdiction to the exclusion of the other." The Court concluded that this doctrine was "necessary to the harmonious cooperation of federal and state tribunals."  Id., 305 U.S. at 466-67.

     Princess Lida remains good law and, where it applies, it prevents two courts from both obtaining in rem or quasi in rem jurisdiction over the same property.  See Dailey v. National Hockey League, 987 F.2d 171, 175-76 (3d Cir. 1993) (applying Princess Lida to parallel lawsuits over a pension plan).  Unlike Colorado River abstention, application of the Princess Lida

doctrine is not committed to the discretion of the court, but is a "mechanical rule" that requires dismissal when its conditions are met.  <u>Id.</u>, 987 F.2d at 176.

        The mandatory nature of the <u>Princess Lida</u> doctrine illuminates the meaning of the "exercise of jurisdiction over property" factor set out in <u>Colorado River</u>.  If this factor were interpreted to apply only when a court exercised true <u>in rem</u> or <u>quasi in rem</u> jurisdiction over property, then it would merely restate and incorporate the doctrine set out in <u>Princess Lida</u>. Such an interpretation would place <u>Princess Lida</u> and <u>Colorado River</u> in conflict because <u>Colorado River</u> emphasizes that no one factor it sets forth is "necessarily determinative" of whether to abstain,[9] but <u>Princess Lida</u> sets forth a mandatory rule.  The reference to the exercise of jurisdiction over property in <u>Colorado River</u> must therefore mean something broader than the <u>in rem</u> or <u>quasi in rem</u> jurisdiction that would trigger <u>Princess Lida</u>.

        The Court therefore concludes that the factor set out in <u>Colorado River</u> concerning the exercise of jurisdiction over property encompasses situations like this where a court has effectively asserted control over property through the exercise of <u>in personam</u> jurisdiction over the person controlling the property. The New York state court exercised effective control over the LLCs at issue here when it enjoined Merritt, their managing member,

_____

[9]        <u>Colorado River</u>, 424 U.S. at 818.

from selling any of their assets.  It continued to exercise that
control when it permitted the sale of LLC properties with 48 hours
notice and continues to retain it now.  With the filing of the
federal suit, this Court is now requested to exercise effective
control of the same property, by again enjoining Merritt from
selling.  The possibility of directly conflicting orders
concerning the disposition of the property and the fact that the
New York court exercised its jurisdiction first therefore weigh in
favor of abstention under the first Colorado River factor.[10]

            b    Inconvenience of the Federal Forum, Avoidance
                 of Piecemeal Litigation, and which Forum's Law
                 Governs the Merits of the Litigation

---

          [10]     The fact that one of R&R's claims in its federal action
is a quiet title action with respect to the Grays Ferry
properties does not alter the Court's analysis.  No Pennsylvania
court appears to have directly addressed whether an action to
quiet title in Pennsylvania is in rem or in personam, although
several decisions refer in passing to its being in rem.  See,
e.g., Stefanick v. Minucci, 333 A.2d 920, 922 (Pa. 1975)
(describing the case before it as one for specific performance
for a contract for the sale of real property and "not one In rem
to quiet title"); Signal Consumer Discount Co. v. Babuscio, 390
A.2d 266, 270 n.9 (Pa. Super Ct. 1978) (referring in passing to
the "in rem nature of a quiet title claim").  The United States
Supreme Court has generally described quiet title actions as in
personam.  See Nevada v. U.S., 463 U.S. 110, 143-44 (1983) (noting
that quiet title actions are in personam, not in rem).  Even if
R&R's federal quiet title action were to be considered in rem,
the "exercise of jurisdiction over property" factor of the
Colorado River analysis would still favor abstention here because
the New York state court was the first court to have exercised
control over the LLC properties at issue here.

The next three factors to be considered under <u>Colorado River</u> do not weigh either in favor or against finding exceptional circumstances warranting abstention.

The federal forum here is not inconvenient to the parties. R&R has voluntarily chosen to file suit here and the defendants are all Pennsylvania residents or Pennsylvania resident corporations.

Permitting parallel litigation to go forward does not raise the risk of piecemeal litigation, within the meaning of <u>Colorado River</u>. The United States Court of Appeals for the Third Circuit has clarified that the "avoidance of piecemeal litigation" factor for <u>Colorado River</u> abstention is met only where there is "a strongly articulated congressional policy against piecemeal litigation in the specific context of the case under review." <u>Ryan</u>, 115 F.3d at 198. Such was the case in <u>Colorado River</u>, where the Supreme Court held the federal statute at issue, the McCarran Amendment concerning water rights, evinced a strong federal policy against concurrent piecemeal litigation. <u>Id.</u> Here, neither the federal nor the New York state law suit raises any federal issue and no federal policy for or against piecemeal litigation is implicated.

Although the law governing the merits of both cases will be state, not federal law, this does not weigh in favor of abstention. The United States Court of Appeals for the Third

34

Circuit has cautioned that while "the presence of federal issues militates against abstention, the converse cannot be said; abstention cannot be justified merely because a case arise entirely under state law." Id., 115 F.3d at 198.  Abstention may be justified where a case presents particularly novel or difficult issues of state law, id., but no such issues are present here.

c  The Order in which the Courts Obtained<br>Jurisdiction and the Adequacy of the State<br>Forum to Protect the Parties' Rights

The final two Colorado River factors favor abstention.

In evaluating the order in which the state and federal courts obtain jurisdiction, a court is to look not just to when the cases were filed, but to "how much progress has been made in the two actions." Moses H. Cone, 460 U.S. at 21.  Here, the New York court obtained jurisdiction over this matter in November 2005, almost a year and nine months before the federal suit was filed.  The New York matter has progressed through the pleading stage, and the New York court has already held several sessions of a bench trial on R&R's claims.  Proceedings in this Court, in contrast, have proceeded only to the motion to dismiss stage. This factor therefore weighs in favor of abstention.

The last factor to be considered is whether the state court proceeding will be adequate to protect the parties' rights. R&R argues that the New York proceeding is inadequate because the

New York court cannot resolve its quiet title action concerning the Grays Ferry properties.  R&R argues that the New York court, itself, conceded its lack of jurisdiction over a quiet title action concerning property in Pennsylvania in the August 3, 2007, hearing held on defendants' contempt motion:  "I think we all acknowledge that if there is a transfer of title, and it is considered now to be questionable and there is a title issue to be determined, clearly I have no jurisdiction there."[11]

R&R, however, does not quote the next sentence of the New York court's colloquy, where Justice Ramos notes that he does have jurisdiction to determine the relevant rights of the parties to the property at issue under the LLC agreements before him and once he makes that determination, it will dispose of the title issue.[12]  The only issue raised in R&R's quiet title claim is whether Merritt was authorized to transfer title of certain properties owned by Grays Ferry Properties LLC to Pelullo and his company Grays Ferry Development.  Resolving this issue depends entirely on Merritt's power to make these transfers under the LLC operating agreement, and the interpretation of that agreement is squarely before the New York court.  Even if the New York court lacks jurisdiction to hear R&R's quiet title action directly, it

---

[11]     Transcript of August 3, 2007, Hearing in R&R Capital, Index No. 604080/05 at 26-27.

[12]     Id.

can nonetheless resolve the propriety of Merritt's transfer of the properties, and if it determines that the transfer was improper, craft an appropriate form of relief, either by adjusting the ultimate value of the parties' shares of the LLC in the accounting action before him or by ordering the parties to transfer title in accordance with his findings.  The New York court can therefore achieve the same result as the federal quiet title action, and thereby adequately protect the parties' rights.

R&R also argues that the New York action cannot adequately protect its rights because its federal claims against Big L Ranch are not before the New York court.  In its federal action, R&R has brought claims against Big L Ranch for tortious interference, conversion, unjust enrichment, civil conspiracy, aiding and abetting, and fraudulent transfer based on Merritt's threat to transfer the Chester County LLC properties to Big L Ranch.  All of these claims, however, are as yet premature because Merritt has not yet transferred these properties and so no breach of contract, conversion, unjust enrichment, or fraudulent transfer has yet occurred.  Moreover, no transfer will take place absent court approval.  Merritt has represented to this Court that it will not transfer any of the properties until this Court has a chance to rule on the defendants' motion to dismiss and, if that motion is denied, hear R&R's motion for a preliminary injunction. The New York court has indicated that it stands ready, should this

Court grant defendants' motion, to promptly entertain R&R's motion to enjoin the transfer.

As a consequence, R&R will have an opportunity in the New York court to litigate the issue of whether Merritt has a right to transfer the Chester County properties before any transfer takes place. If the New York court rules that Merritt is authorized to make the transfers under the LLC operating agreements, then the court approval would remove any basis for R&R's claim that the transfer would constitute tortious conduct; if, on the other hand, the court ruled that Merritt was not authorized to transfer the properties, then no transfer would take place and R&R's claims would be moot.

Finally, R&R suggests that the state court action is inadequate because the New York court may lack personal jurisdiction over several of the federal court defendants. R&R claims Big L Ranch, Peter Pelullo, and Grays Ferry Development may be able to argue that they lack sufficient contacts with New York to be subject to its jurisdiction. If true, this would raise a significant concern about the adequacy of state proceedings, at least concerning the Grays Ferry properties. Absent jurisdiction, the New York court could not order Pelullo or Grays Ferry Development to return or re-title the LLC properties in Grays Ferry allegedly wrongfully titled in their names. (The same concern does not exist, however, with respect to the Chester

County properties because those properties have not yet been transferred and, as discussed above, will not be transferred absent court approval.)[13]

This issue of jurisdiction, however, can be waived. Even if these defendants would not ordinarily be subject to jurisdiction in New York, they have moved to dismiss this case in favor of pending New York proceedings. By making this argument, the defendants would seem to have implicitly consented to the jurisdiction of the New York court. The question of whether the defendants have implicitly waived their right to contest New York jurisdiction need not be decided, however, because the Court can require that such a waiver be made explicitly. To remove any question as to whether the defendants will be subject to New York jurisdiction, the Court will bifurcate its order and condition any dismissal of the allegations concerning the Grays Ferry properties on defendants Peter Pelullo and Grays Ferry Development consenting to the jurisdiction of the New York courts. If those defendants consent to jurisdiction, then R&R's legitimate concern regarding the adequacy of the state court proceeding will be removed. If they do not consent, then the proceedings concerning Grays Ferry will continue in this Court.

---

[13]     Even if the transfer of those Chester County properties to Big L Ranch were to occur, the New York court would still be able to reach Big L by virtue of its jurisdiction over Lyn Merritt, Big L's sole owner, who could be ordered to have Big L return or retitle the properties.

d.   <u>Consideration of All Factors Together</u>

Under <u>Colorado River</u>, once the Court has evaluated the relevant factors, it must make a "carefully considered judgment taking into account both the obligation to exercise judgment and the combination of factors counseling against that exercise," with no one factor "necessarily determinative." <u>Colorado River</u>, 424 U.S. at 818.  In balancing these factors, the Court's decision is to be "heavily weighted" toward the exercise of jurisdiction. <u>Moses H. Cone</u>, 460 U.S. at 16.  As discussed above, the Court has found that the factors concerning jurisdiction over property and the order in which the courts obtain jurisdiction weigh in favor of abstention and no factor weighs against abstention.  Given this balance in favor of abstention, coupled with the Court's concern that the pendency of these two cases could result in contradictory injunctive orders, the Court believes that this case presents the "extraordinary circumstances" required for the exercise of its discretion to abstain under <u>Colorado River</u>.

3.   <u>To Stay or To Dismiss</u>

Having determined that it should abstain under <u>Colorado River</u>, the Court must decide whether to stay this case pending the outcome of the state proceedings or whether to dismiss the case entirely.  As the United States Supreme Court has noted, if a

district court has properly applied the <u>Colorado River</u> factors, there should be very little practical distinction between a stay and a dismissal because, in deciding to abstain, the court must necessarily have concluded that "the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties" and therefore anticipate that it will "have nothing further to do in resolving any substantive part of the case, whether it stays or dismisses." <u>Moses H. Cone</u>, 460 U.S. at 28.

For the reasons set out above, the Court fully anticipates that the pending New York proceeding will resolve all of the issues raised in this federal action.  If, however, for some unanticipated reason, the New York action fails to resolve all of the issues between the parties, then it may be necessary for this Court to conduct further proceedings.  Although the New York litigation is expected to conclude in a matter of months, it is possible that its conclusion could be delayed and that any further proceedings that might be necessary in this Court could take place a significant amount of time in the future.

This creates the possibility, however remote, that statute of limitations issues could affect R&R's right to bring future proceedings in this Court concerning matters left unaddressed by the New York state court.  To avoid that possibility, this Court will exercise its discretion under

41

Colorado River to stay this action pending the resolution of the New York litigation, rather than dismiss it outright.

     An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

R & R CAPITAL, LLC            :          CIVIL ACTION
                              :
      v.                      :
                              :
LYN MERRITT, et al.           :          NO. 07-2869

---

ORDER

AND NOW, this 23rd day of October, 2007, upon consideration of the defendants' Motion to Dismiss (Docket # 9), and the plaintiff's opposition thereto, IT IS HEREBY ORDERED that, for the reasons set forth in the accompanying Memorandum, the Motion is GRANTED as follows:

1)    This matter is STAYED and shall be placed in civil suspense, pending the resolution of the parallel New York state court proceeding, R&R Capital LLC v. Linda Merritt, Index No. 604080/05, IAS Part 53 (N.Y. Supreme Ct.).  This stay may be lifted by further order of the Court, as set out below.

2)    The stay with respect to Counts IV through XII of the Amended Complaint, concerning the actions of defendants Lyn Merritt and/or The Big L Ranch LLC with respect to certain properties in Chester County, Pennsylvania, is not conditioned on any act by the parties and will continue until the resolution of the parallel state proceeding.

3)    The stay with respect to Counts I through III of the Amended Complaint, concerning the actions of defendants Lyn

Merritt, Peter Pelullo, and Grays Ferry Development Corp. with respect to properties in the Grays Ferry section of Philadelphia, Pennsylvania, is conditioned on defendants Peter Pelullo and Grays Ferry Development Corp. submitting to the jurisdiction of the New York court concerning the matters raised in the Amended Complaint.

4)   If defendants Peter Pelullo and Grays Ferry Development Corp. are willing to submit to the jurisdiction of the New York courts with respect to the matters alleged in the Amended complaint, they shall file a consent to such jurisdiction in this Court on or before November 1, 2007.  Copies of these consents shall also be provided to the presiding judge in the New York litigation.   If these consents are filed, then the stay will continue as to all claims until the conclusion of the New York litigation.  If, however, Peter Pelullo and Grays Ferry Development Corp. do not consent to submit to the jurisdiction of the New York courts, then the Court will lift the stay with respect to Counts I through III of the Amended Complaint, and litigation on those Counts will proceed in this Court.

6)   The parties shall inform the Court promptly upon the final resolution of the New York litigation.


BY THE COURT:


/s/ Mary A. McLaughlin
MARY A. McLAUGHLIN, J.

2